# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY                                           PLAINTIFF/COUNTER-DEFENDANT

VERSUS                                                      CIVIL ACTION NO. 1:06CV345-P-D

THE ESTATE OF JEREMY BLANCHARD,
et al                                                       DEFENDANT/COUNTER-PLAINTIFF

## MEMORANDUM OPINION

This cause is before the Court on the plaintiff's Motion for Summary Judgment, Or In the Alternative, Motion to Dismiss Extra-Contractual Damages [41]. The Court, having reviewed the motion, the response, the briefs of the parties, the authorities cited and being otherwise fully advised in the premises, finds as follows, to-wit:

## FACTUAL BACKGROUND[1]

On December 28, 2005, Jeremy Blanchard [hereafter "Jeremy"] died from injuries sustained in a single-car motor vehicle accident which occurred in Cobb County, Georgia. At the time of the accident, Jeremy was a passenger in a vehicle owned and operated by Angela Stone. The sole cause of the accident was Stone's negligence. Stone had no automobile liability insurance in effect at the time of the accident.

---

[1] As is required on a Motion for Summary Judgment, the facts are stated in the light most favorable to the nonmovant.

Jeremy's parents, Cathy [hereafter "Cathy"] Blanchard and J.D. Blanchard [hereafter "J.D."], divorced on or about June 24, 1996.[2] Jeremy was eleven years old. Although Cathy and J.D. shared joint legal custody of Jeremy, the chancellor awarded Cathy primary physical custody.[3] Following the divorce, Jeremy continued to reside in Mississippi with his mother until he graduated from high school.

J.D. relocated to Wisconsin prior to divorcing Cathy. He subsequently remarried Lisa (Blanchard) [hereafter "Lisa"]. J.D. remained actively involved in Jeremy's life; Jeremy routinely spent every summer from 1996 through 2001 in Wisconsin with J.D and his stepmother.[4]

After graduating from high school in 2003, Jeremy enrolled in Rust College in Holly Springs, Mississippi. He later transferred to Jackson State University in Jackson, Mississippi. From there, he transferred to American Intercontinental University [hereafter "AIU"] in Atlanta, Georgia. Jeremy began attending AIU in July 2005 and remained enrolled as a student until the time of his death. At each of the referenced institutions, Jeremy resided in campus housing. He spent scheduled breaks at his mother's home in Tupelo, Mississippi.

At the time of Jeremy's death, Jeremy's stepmother Lisa had automobile insurance through State Farm Mutual Automobile Insurance Company [hereafter "State Farm"] pursuant to policy

---

[2] Judgment of Divorce from the Lee County Chancery Court. Exhibit B to State Farm's Motion for Summary Judgment.

[3] The divorce decree ordered J.D. to pay Cathy $1000/month toward Jeremy's support. In addition, J.D. was responsible for half of Jeremy's college tuition and related expenses. J.D. fully complied with his financial support obligations from the time of the divorce until Jeremy's unfortunate death.

[4] Jeremy did not visit his father in Wisconsin after 2001; however, his father maintained contact and visited with Jeremy while traveling through Mississippi on business between 2001 and 2005.

number 0111-D23-49D.  Under the terms of the policy, his estate has a potential claim to two types of coverage–medical payments and uninsured motorist coverage.

State Farm received notice of the accident nearly six months subsequent thereto.  The insurer acknowledged the claim by way of letter dated June 12, 2006 directed to James Moore, the attorney retained by Jeremy's family.  At that time, State Farm notified the Jeremy's wrongful death heirs of its concern regarding whether Jeremy met the definition of a relative as that term was defined in the policy; the company expressly reserved its right to deny coverage.  The letter also asked counsel to provide supporting documentation regarding Jeremy's place of residence.  No response was forthcoming.

On July 27, 2006, State Farm Claim Representative Jason Renard sent Moore a follow up requesting specific documentation.  Moore responded by letter dated August 1, 2006; he asserted a claim for uninsured motorist benefits on behalf of Jeremy's heirs and provided a copy of the decree for divorce and property settlement which detailed the custody and support of Jeremy Blanchard as well as copies of the accident report and Jeremy's death certificate.

Renard wrote to Moore again on September 5, 2006; his letter acknowledged receipt of the demand package and requested additional information, to-wit: 1) a copy of Jeremy's transcript or grade report establishing his status as an active student; 2) documentation establishing J.D.'s compliance with the financial obligations set forth in the divorce decree; and 3) dates Jeremy spent at Lisa and J.D.'s home in 2004 and 2005.

Christopher Evans, another lawyer assisting with the family's representation, responded by letter on September 13, 2006.  In addition to providing the requested information, he reiterated the previous demand for payment of benefits under the policy.  On October 5, 2006, Evans sent another

inquiry as to the status of the claim; he made what purported to be a "final demand" for tender of all applicable coverage.

State Farm reacted to Evans' letter by seeking a coverage opinion from Wisconsin attorney Claude J. Covelli.on October 13, 2006.[5] Covelli provided the requested opinion on October 23, 2006; he concluded that Jeremy could not meet the policy's definition of a relative unless his primary place of residence was with J.D. and Lisa Blanchard prior to leaving for college.[6] At State Farm's direction, Covelli commenced preparations for the filing of a declaratory judgment action; however, he abandoned those efforts on or about November 13, 2006 after notifying State Farm of potential difficulties in obtaining personal jurisdiction over some of the interested parties.

Thereafter, on December 6, 2006, Evans wrote to State Farm on behalf of Jeremy's family. His correspondence notified the company of his intent to file a declaratory judgment action and a bad faith claim in the event State Farm failed to tender the policy limits as to all applicable coverage within seven days. State Farm responded on December 12, 2006 with a reminder of its October 13, 2006 request for information.

On December 20, 2006, Evans sent State Farm a response via facsimile. The letter disputed State Farm's coverage position and clearly communicated the Blanchard family's contrary position to the effect that Jeremy's status as an unmarried, unemancipated child student obviated the need

---

[5] At the same time State Farm responded to Evans by correspondence requesting additional information tending to establish that Jeremy's primary residence was with J.D. and Lisa Blanchard.

[6] The thirteen page opinion included much detail and raised a multitude of questions for State Farm's consideration. Covelli's opinion relied in great part on the relevance and application of Bauer v. USAA Casualty Insurance Company, 720 N.W.2d 187 (Wis. Ct. App. 2006), discussed infra..

for proof of his primary residence. Evans' correspondence also included a final demand with a deadline of December 22, 2008.

The following day, December 21, 2006, State Farm brought suit to obtain a declaration of its rights and obligations under Lisa Blanchard's automobile insurance policy in accordance with the provisions of F.R.C.P. 57. Jeremy Blanchard's wrongful death heirs[7] filed an answer and a counterclaim alleging a right to payment of benefits under the policy and a claim for extra-contractual damages based on State Farm's alleged bad faith in handling the claim. After an opportunity to conduct discovery, State Farm filed a motion for summary judgment on the issue of coverage and the counterclaim for punitive damages. The motion has been fully briefed and the Court is prepared to rule.

STANDARD OF REVIEW

Rule 56© of the Federal Rules of Civil Procedure authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Celotex Corporation v. Catrett, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S. Ct. 2548 (1986). The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment. John v. State of La. (Bd. Of T. for State C. & U., 757 F.2d 698, 712 (5th Cir. 1985).

A judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There

---

[7] The decedent's wrongful death heirs are his natural parents, Cathy Blanchard and J.D. Blancard, and his siblings, Jeffrey Blanchard, Sredrick Blanchard, Debbie Blanchard and Tonja Belfor.

is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 91 L.Ed.2d 202, 106 S. Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis, 799 F.2d 218, 222 (5th Cir. 1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." Id. "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment. Phillips Oil Company, v. OKC Corporation, 812 F.2d 265, 272 95th Cir. 1987). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. See Celotex, 477 U.S. at 323, 106 S. Ct. at 2552. Topalian v. Ehrman, 954 F.2d 1125, 1138 (5th Cir. 1992).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. McPherson v. Rankin, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. Union Planters Nat. Leasing v. Woods, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. Topalian, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." John, 757 F.2d at 708. "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment, " even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. Id. at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. Ferguson v. National Broadcasting Co., Inc., 584 F.2d 111, 114 (5th Cir. 1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." In Re Municipal Bond Reporting Antitrust Lit., 672 F.2d 436, 440 (5th Cir. 1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed. R. Civ. P. See also Union Planters Nat. Leasing v. Woods, 687 F.2d at 119.

While generally "[t]he burden to discover a genuine issue of fact is not on [the] court, (Topalian, 954 F.2d at 1137), "Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention–the court must consider both before granting a summary judgment." John, 757 F.2d at 712, quoting Keiser v. Coliseum Properties, Inc., 614 F.2d 406, 410 (5th Cir. 1980).

LEGAL ANALYSIS

I.      Choice of Law

Before turning to the ultimate substantive questions, the Court must, as a preliminary matter, determine what law is applicable to the parties' dispute. The present case involves a contract of insurance arising out of a claim for benefits under the a policy of insurance held by Lisa Blanchard. Three states have a connection with the cause of action–Wisconsin, Georgia and Mississippi. State Farm issued the subject insurance policy in Wisconsin to a Wisconsin resident. The automobile accident which resulted in Jeremy Blanchard's death occurred in Georgia. Jeremy was a resident of Mississippi at the time of his death.

Because Mississippi is the forum state, the Court will apply Mississippi's conflicts of law rules to decide which state's law will govern. Mississippi utilizes the "center of gravity analysis" embodied in the Restatement (Second) of Conflicts of Law. Powe v. Roy Anderson Const. Co., Inc., 910 So.2d 1197, 1207 (Miss. 2005).

> This doctrine is a rule whereby the court trying the action applies the law of the place which has the most significant relationship to the event and parties or which, because of the relationship or contract with the event and parties, has the greatest concern with the specific issues with respect to the liabilities and rights of the parties to the litigation.

Zurich American Ins. Co. v. Goodwin, 920 So.2d 427, 433 (Miss. 2006).

The analytical framework to be applied in a given case differs depending on the substantive area of law involved. When the case sounds in contract, the provisions of § 188 of the Restatement guide the inquiry. Boardman v. United Services Automobile Association, 47 So.2d 1024, 1032 (Miss. 1985). Section 188 provides as follows:

> In the absence of an effective choice of law by the parties . . ., the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> (a) the place of contracting,
> (b) the place of negotiation of the contract,
> © the place of performance,
> (d) the location of the subject matter of the contract, and
> (e) the domicile, residence, nationality, place of incorporation and place of business of the parties [to the contract].

Restatement (Second) of Conflict of Laws § 188.[8]  See also Goodwin, 920 So.2d at 435-36.

The foregoing factors clearly mitigate in favor of the application of Wisconsin law to the instant case. Wisconsin was the place of contracting and negotiation. As a further matter, the place of performance is also Wisconsin inasmuch as Blanchard remitted policy premiums in Wisconsin and policy benefits would be paid out of Wisconsin. The insurance policy at issue insured a vehicle which was garaged in Wisconsin. Although State Farm is incorporated and has its principal place of business in Illinois, Lisa Blanchard, the policyholder, is a domiciliary of Wisconsin. In short, every significant contact to the insurance contract points to Wisconsin as the place with the greatest

---

[8] Section 6 outlines certain policy principles affecting the choice of law in particular cases. Those principles include:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> © the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6(2).

interest in the determination of the coverage issue at bar.[9] Consequently, the Wisconsin law applies to this declaratory judgment action and to defendant's counterclaim for bad faith refusal to pay insurance benefits.

II.     Medical Payments Coverage

State Farm seeks a declaratory judgment regarding its duty to pay benefits under the medical payments coverage provided by the subject policy. Inasmuch as the defendants concede this issue, no detailed discussion is necessary on this point.

III.    Uninsured Motorist Coverage

State Farm also seeks a declaration concerning its obligation to pay benefits under the uninsured motorist coverage afforded by the policy in question. There is no question that the accident vehicle met the policy definition of an "uninsured motor vehicle." Instead, resolution of the coverage issue depends entirely on whether Jeremy Blanchard was an insured under the terms of the policy at the time of his death.

   A.     Defining the Issue

The policy provides in pertinent part:

**UNINSURED MOTOR VEHICLE - COVERAGE U**

We will pay damages for **bodily injury** an **insured** is legally entitled to collect from the owner or driver of an **uninsured motor vehicle.** The **bodily injury** must be sustained by an **insured** and caused by accident arising out of the operation, maintenance or use of an **uninsured motor vehicle.**

---

[9] Defendants urge the Court to apply Mississippi law to decide the coverage issue. The decedent's heirs engage in none of the required conflicts of law analysis. Instead, the defendants offer only the conclusory argument that Mississippi law should apply because the case "involves an unmarried, unemancipated child who was a full-time college student and primary resident of the State of Mississippi at the time of his death . . . ." Neither party maintains that Georgia law governs the parties' dispute.

. . .

**Who is an insured**

**Insured**–means the **person** or **persons** covered by uninsured motor vehicle or underinsured motor vehicle coverage.

This is:

1. the first **person** named in the declarations;
2. his or her **spouse**;
3. their **relatives**; . . . .

. . .

**You** or **Your**–means the named insured or named insured shown on the declarations page.

**Relative**–means a **person** related to **you** or **your spouse** by blood, marriage or adoption who resides primarily with **you**. It includes **your** unmarried and unemancipated child away at school.

Exhibit B to defendants' Consolidated Response.

The policy established three categories of insureds for purposes of uninsured motorist coverage: 1) the named insured(s); 2) the spouse of the named insured; and 3) relatives of either. Jeremy Blanchard is not an insured under either of the first two categories listed above. Lisa Blanchard is the only person listed on the declarations page. Consequently, she is the "named insured" under the terms of the policy. Her husband, J.D. Blanchard, is an insured "spouse." Therefore, in order to be eligible for uninsured motorist benefits under Lisa Blanchard's policy, Jeremy Blanchard must be a "relative" under the terms of the insurance contract.

As noted above, the policy defines the term "relative". The policy definition extends coverage to "a person related to you or your spouse by blood, marriage or adoption who resides primarily with you. It includes your unmarried and unemancipated child away at school." The

11

parties agree that Jeremy Blanchard was related to J.D. Blanchard by blood and Lisa Blanchard by marriage. It would appear the parties are even in agreement that Jeremy's primary residence was not with J.D. and Lisa; but with his mother Cathy in Tupelo, Mississippi when he was not attending college. The parties likewise agree that at the time of his death, Jeremy was an unmarried, unemancipated student. The sole source of disagreement between the parties is whether uninsured motorist coverage is available to Jeremy despite the fact that his place of primary residence was not with his father and stepmother at the time of the accident or immediately prior thereto.

B. The Parties' Respective Positions

State Farm urges the language of the policy is clear and unambiguous. It maintains the only reasonable reading of the policy's definition of a "relative" conditions coverage on the residence of the relative in question. More specifically, coverage is available only where the relative's primary residence lies with the named insured at the time of the accident. State Farm avers that the second sentence of the definition which reads "[i]t includes your unmarried and unemancipated child away at school" must be read conjunctive to the first sentence. Under the interpretation advanced by the insurer, only those unmarried and unemancipated students who maintained a primary residence with the named insured immediately prior to leaving for school would be eligible for uninsured motorist coverage under the policy. The parties are in agreement that Jeremy would not qualify as an insured relative if the foregoing interpretation is accurate.

By contrast, the Blanchard heirs posit a contrary interpretation. The heirs read the two sentence definition of "relative" in the disjunctive. They urge that a relative may qualify for uninsured motorist coverage in one of two ways. Coverage is available for a person related to the named insured by blood, marriage or adoption who resides primarily with the insured or to an

12

unmarried, unemancipated child of the named insured or his/her spouse if the child is away at school irrespective of his or her primary place of residence. If the heirs' interpretation of the policy language is correct, then Jeremy is an insured relative entitled to benefits under Lisa's uninsured motorist coverage.

C. Contract Construction

Construing the provisions of an insurance policy requires close examination of the specific provisions at issue and an assessment of whether contextual ambiguity exists. Badger Mut. Ins. Co. v. Schmitz, 647 N.W.2d 223, 234 (Wis. 2002). Wisconsin courts apply general rules of contract construction in interpreting an insurance contract. Taylor v. Great Way Ins. Co., 628 N.W.2d 916, 920 (Wis. 2001). Toward that end:

> We construe ambiguities in coverage in favor of the insured and narrowly construe exclusions in coverage against the insurer. The language of an insurance policy is ambiguous when it is "susceptible to more than one reasonable construction." If the language in an insurance policy is ambiguous, we interpret that language by trying to determine "what a reasonable person in the position of the insured would have understood the words of the policy to mean." In addition, the interpretation of language in an insurance policy should advance the insured's reasonable expectations of coverage. However, we will apply the language of the policy and not engage in construction when the language of the policy is unambiguous.

Id.

D. Examining the Policy Language

State Farm's argument is entirely founded on Bauer v. USAA Casualty Insurance Co., 720 N.W.2d 187 (Wis. Ct. App. 2006).[10] In Bauer, the Wisconsin Court of Appeals addressed identical

---

[10] While State Farm cites other cases construing the same policy language, none of those decisions represent mandatory authority. State Farm Mut. Auto. Ins. Co. v. Fultz, 2007 WL 2789461 (N.D.W.V. Sept. 24, 2007); State Farm Mut. Auto. Ins. Co. v. Harris, 882 So.2d 849 (Ala. 2003); State Farm Mut. Auto. Ins. Co. v. Colon, 880 So.2d 782 (Fla. Dist. Ct. App. 2004); Jenks v. State Farm Mut. Ins. Co., 2005 WL 602560 (Mich. Ct. App. March 15, 2005); Wallace

13

policy language in deciding whether Matthew Oleson, a member of the United States Navy who was permanently stationed in Gulfport, Mississippi, was a primary resident of his mother's household for purposes of uninsured motorist coverage. The appellate court reviewed the policy definition and concluded Oleson was not entitled to coverage. The focal point of the court's analysis was the import of the word "primarily" in the first sentence:

> The modifier "primarily" makes the phrase "resides primarily with you" unambiguous, at least as applied to the facts of this case. MERRIAM WEBSTER'S COLLEGIATE DICTIONARY defines "primarily" as "for the most part," or "chiefly." One meaning it gives "primary" is "of first rank, importance or value," or "principal." To have a "primary" residence under this commonly accepted definition means there can only be one primary residence. Because one cannot "primarily reside" in more than one place, the use of the modifier "primarily" avoids the uncertainties that were a cause of the disputes in Doern, Pamperin, Seichter and Ross.

Id. at 190 (citations omitted).

Plaintiff's reliance on Bauer is misplaced. First and foremost, there is no similarity of circumstance between Bauer and the present case. Bauer involved a young man enlisted in the military; not an unmarried, unemancipated student. The second sentence of the policy definition was inapplicable and any discussion of it by the Bauer court was simply dicta. In Bauer, therefore, the appellate court merely considered the facts and determined that the decedent's prior residence in his mother's household and a future intent to return there upon discharge, were insufficient to establish primary residence with his mother at the time of the accident. By contrast, Jeremy was an unmarried, unemancipated college student at the time of his death; therefore, proper construction

---

v. State Farm Mut. Ins. Co., 2007 WL 4216132 (Ohio Ct. App. Nov. 30, 2007). Aside from that, the foregoing authorities suffer from the same deficiency as the Bauer opinion: none involved an unmarried, unemancipated child away at school. Hence, the proper interpretation of the second sentence of the policy definition was wholly irrelevant to the coverage issue before those courts.

14

of the second sentence of the definition is of critical importance to the analysis in this case. For these reasons, the Court is reluctant to grant any special import to the single paragraph of the Bauer opinion which addresses the second sentence of the definition of relative.

The correct interpretation of the second sentence, and the policy definition as a whole, turns on the meaning of the pronoun "[i]t" at the beginning of the second sentence. A pronoun is defined as "any of a small set of words in a language that are used as substitutes for nouns or noun phrases and whose referents are named or understood in the context." Broken down, a pronoun, then, is simply a word that takes the place of a noun or a noun phrase.[11] Effective pronoun use requires that the antecedent (the noun or noun phrase to be replaced) be clearly identified by preceding text. When an antecedent is not clearly identified–especially in sentences with more than one possible referent--the meaning of the sentence is ambiguous.

In the State Farm policy, "it" has more than one possible antecedent. On one hand, the antecedent referent could be the noun "relative." Replacing the pronoun "[i]t" with the word "[r]elative" would result in the following: "Relative . . . includes your unmarried and unemancipated child away at school." Such a reading is consistent with the use of "it" as an impersonal, gender neutral pronoun. So construed, the second sentence arguably recognizes an alternative definition of relative not subject to the constriction of primary residency imposed by the first sentence.[12] On the other hand, the antecedent might be the entire noun phrase "a person related

---

[11] A noun phrase is a phrase whose head is a noun or a pronoun, optionally accompanied by a set of modifiers.

[12] The foregoing interpretation of policy language has been put forward by Judge P.J. Yates of the Court of Civil Appeals of Alabama in B.D.B. v. State Farm Mut. Auto. Ins. Co., 814 So.2d 877 (Yates, J., dissenting). The focus of Judge Yates' dissenting opinion was his conviction that application of the primary residence requirement to children of divorced parents

15

to you or your spouse by blood, marriage or adoption who resides primarily with you." Rephrased, the second sentence might read: "A person related to you or your spouse by blood, marriage or adoption who resides primarily with you . . . includes your unmarried and unemancipated child away at school." Under the second interpretation, an unmarried and unemancipated child arguably must establish that <u>but for</u> his attendance at school, his primary residence is with the named insured.[13] [14]

---

was a violation of public policy in that it unfairly limited them to uninsured-motorist coverage under policies held by their custodial parent. In doing so, he noted the apparent inequity in available coverage when the child is away at school: "This means, presumably, that both married and divorced parents could send their teenager to a private boarding school or to college and that the phrase 'lives primarily with you' would be totally disregarded and coverage would still be provided." <u>Id.</u> at 883.

[13] The Wisconsin Court of Appeals identified the antecedent to which "it" refers as "[who] resides primarily with you." <u>Id.</u> However, the phrase "primarily resides with you" is neither a noun nor a noun phrase; it is merely a relative clause which makes up a portion of a noun clause.

[14] Aside from being dicta, the paragraph of the <u>Bauer</u> opinion addressing the second sentence of the definition is subject to criticism for its lack of clarity. In fact, both plaintiff and defendants cite the opinion in support of the constructions proffered by each. The opinion reads:

> The Bauer policy adds to the definition of "primarily resides with you" by including an additional category of insured persons. "[R]esides primarily with you . . . . includes your unmarried and unemancipated child away at school." Were it not for this sentence, unmarried and unemancipated children away from home at school would not be insured under their parents' UIM coverage because they would be primarily residing in a college dormitory or apartment and not at home."

<u>Bauer</u>, 720 N.W.2d at 190. The first half of the sentence suggests State Farm's position is correct in that the Court of Appeals states the policy "adds to the definition of 'primarily resides with you;'" however, the remainder of the sentence veers away and recognizes it as "including an additional category of insured"–a reading susceptible to the heirs' position. The second sentence is even less elucidating. In the main, the sentence recognizes the critical importance of the policy language extending coverage to unmarried and unemancipated students who would otherwise be ineligible for coverage by virtue of their inability to satisfy the primary residence requirement <u>at the time</u> of the loss. In so doing, it fuels the heirs' argument that the additional policy language creates an exception to the primary residence requirement for a particular class of relatives. However, the <u>Bauer</u> court also inserts additional language in the policy ( "away

16

State Farm maintains the policy language clearly and unambiguously precludes coverage for Jeremy because he cannot prove that his primary residence was with J.D. and Lisa while not at school. While Jeremy's heirs agree that the policy language is susceptible to only one reasonable interpretation, they urge the Court to find that Jeremy's status as an unmarried, unemancipated student conforms to the policy's definition of a relative, thus proving him to be an insured for purposes of uninsured motorist coverage.

As demonstrated in the foregoing discussion, however, either construction is reasonable under the circumstances. The policy's confusing use of the small personal pronoun "it" without a clear identification of the proper antecedent renders the policy language ambiguous. Under the circumstances, that ambiguity must be construed against State Farm. A reasonable person in the position of the insured would have understood the words of the policy to recognize an unmarried, unemancipated child away at school as an insured without reference to the condition of primary residence outlined in the preceding sentence. Such an interpretation also advances the insured's reasonable expectations of coverage. State Farm's motion for summary judgment is not well-taken and should be denied. Inasmuch as Jeremy Blanchard qualifies as an unmarried, unemancipated child away at school at the time of the accident, he is a "relative" as defined in the policy; he is thus an insured for purposes of uninsured motorist coverage

---

[from home] at school") without scrutiny or explanation, adding fodder to State Farm's argument that the student's place of residence <u>prior</u> to leaving for school is not only relevant, but determinative. In short, <u>Bauer</u> offers no easy resolution to the problem at hand.

IV.  Extra-Contractual Damages

In addition to seeking summary judgment on the issues in the declaratory judgment action, State Farm also urges the Court to enter judgment in its favor on the defendants' counterclaim based on the insurer's alleged bad faith in refusing to pay benefits under the policy. Jeremy's heirs oppose the requested relief.

To prevail on a bad faith claim, a claimant must prove "the absence of a reasonable basis for denying benefits of the policy and the knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. Anderson v. Continental Ins. Co., 271 N.W.2d368, 376 (Wis. 1978). An insurer lacks a reasonable basis for denying a claim when the claim is not "fairly debatable." Id.   State Farm never denied the claim for uninsured motorist benefits. Instead, the company acknowledged receipt of the claim and notified the claimants of its concerns regarding coverage. Furthermore, every communication which followed emphasized State Farm's particular interest in Jeremy's primary place of residence at the time of his death (and prior to leaving for school). The insurer also sought the advice of counsel with regard to the matter of coverage; that attorney provided a comprehensive opinion which analyzed the policy language alongside the available legal precedent. That opinion confirmed State Farm's policy interpretation. When the defendants' attorney spelled out his contrary interpretation, State Farm acknowledged the need for a judicial resolution of the parties' differing positions concerning policy interpretation and filed the present declaratory judgment action. And, as the foregoing analysis in section III. indicates, State Farm's policy interpretation was a reasonable one, despite the Court's ultimate finding of behalf of defendants. Under the circumstances, defendants' bad faith claims must be dismissed with prejudice.

18

CONCLUSION

Based on the foregoing facts and analysis, the Court finds that the plaintiff's Motion for Summary Judgment, Or In the Alternative, Motion to Dismiss Extra-Contractual Damages [41] should be granted in part and denied in part. An Order will issue accordingly.

SO ORDERED, this the 8th day of September, 2008.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE